**BOWLES, Price Administrator, v.
SCHAGRIN et al.
Civil Action No. 662.**

District Court, D. Delaware.
Feb. 18, 1946.

Howard L. Fussell, Enforcement Atty., of Wilmington, Del., for the Office of Price Administration.

Philip Cohen, of Wilmington, Del., for defendants.

LEAHY, District Judge.

This is an action by the OPA to recover triple damages for overceiling sales in violation of Rule 1, Sec. 4, and Rule 2(i) and (iii) of Revised Maximum Price Regulation 330. Plaintiff sent two investigators to defendants' place of business. Defendants are husband and wife and conduct a small·shop in Wilmington for the sale of ladies' wear. The OPA investigators made an elaborate examination and also extensively questioned defendant Isadore Schagrin. They concluded that defendants had sold garments at overceiling prices and this action followed.

At the request of the investigators, defendant Isadore Schagrin produced his stock book, which contained records for the months of August 1941 to December 1941. This stock book contained the manufacturer's number, style, cost price, selling price, color and size of each garment received by defendants and was written in blue ink. In addition, the book contained red lines drawn through the lines of the size column, each of which indicated that the garment in that particular size had been sold during a specified period. The purpose of using a red line in the stock record book, as explained by defendants, was that it was a convenient and quick method of telling at a glance how many garments of a certain style had been sold and which, therefore, aided in the reordering of garments. This stock book was taken to New York when defendants went there to purchase merchandise; and it was the book from which defendants originally made up the price chart filed with the OPA. One of plaintiff's investigators examined this particular book and found that the price chart correctly reflected the facts. The other investigator examined defendants' stock book for the period July 1, 1944 to the date of the investigation, July 13, 1945. This stock book contained entries of the receipt of over 2000 garments; 214 of these had sales prices which were in excess of ceiling prices in an aggregate amount of $556.75. This particular book contained no red lines. The explanation which defendant Isadore Schagrin offered for this was that he had discontinued the practice of marking with a red line the number of dresses sold because market conditions made it impossible to reorder similar merchandise. In 1944 and 1945 defendant did not even bother to take the stock book to New York with him when he bought additional merchandise for he was glad to get any kind of merchandise that any manufacturer would sell him. Defendant Isadore Schagrin admitted that in his stock record book there were some prices entered at higher than ceiling, but by way of explanation testified that he did not use the stock record book to make up the price ticket he actually put on the dresses. He

said that he made up such price ticket directly from the invoices and that the prices he put on the dresses were ceiling prices. And further, he explained that he was simply following a custom which prevailed before the Regulation went into effect, of marking a high price on some particular garment because in lots there is usually or often one garment which is superior to the others and will command a higher price. He stated that he told the investigator that the majority of the dresses which appeared in the stock record book marked overceiling were still in stock and that the investigator could satisfy herself that the actual price ticket attached to any dress hanging in his store was a ceiling price. He further testified that the investigator declined to look at the price tags attached to the garments in his store. The investigator admitted this on the stand. The correctness of defendant's testimony in this particular will therefore be assumed.

At trial Schagrin, in response to a subpoena, produced all invoices of merchandise received from January 1 to July 13, 1945. A spot check was made of these invoices in the courtroom by picking several items at random and comparing the number of garments listed on the invoices with the number of garments listed in the stock record book. The invoices checked with the stock record book in every instance but one. In that case there were two separate invoices for three garments each, but the stock record book contained the entry of but one of the invoices for three garments.

The evidence was clear that defendant kept no records which identified the garments sold. He had sales slips and original invoices but they only described the items sold in the most general terms. Plaintiff argues that the stock record book is evidence that defendant actually sold dresses at overceiling prices in accordance with the prices listed in that book. It is plaintiff's position that the explanations offered by defendant are not worthy of belief, especially since defendant did not keep sales records in accordance with Sec. 7 of the Revised Maximum Price Regulation 330 and because the price chart compiled in accordance with this Regulation had been misplaced or lost. Defendant, on the other hand, contends that the explanation offered conforms with the general practice and that had the investigators followed their suspicion by an examination of the garments still in stock, the explanation would have been verified. Defendant further contends that the invoices checked at trial with one exception reenforce his explanation.

■■■ I think the action should be dismissed and plaintiff's prayer for injunction denied. This case involves purely a question of fact. Did defendants in fact sell dresses at overceiling prices? Now it is true that this can be proved by circumstantial evidence and it is also true that defendants' explanation of the stock record books is not quite satisfactory. But this is overbalanced by the great gap in plaintiff's own proof. The investigators questioned defendant Isadore Schagrin about the entries in the stock record book; he gave an explanation which to them was unsatisfactory. It was then their plain duty to utilize all means to check the accuracy of his explanation before concluding it was false. They failed to do this because they would not examine any of the price tags attached to the garments listed in the stock record book which were still in the store and unsold. It is not clear why the investigators refused to make this check, but it is clear that the investigators' duty was to ascertain the facts, no matter whether some of them might be in favor of the defendants or the Administrator. I accordingly must assume that these facts were as testified to by defendant Isadore Schagrin. Under this assumption the circumstantial evidence is therefore insufficient to show sales at overceiling prices.

The complaint should be dismissed and the prayer for injunction denied.